(32 App. Div. 596.)

## FORD v. STANDARD OIL CO.

(Supreme Court, Appellate Division, Fourth Department. July 26, 1898.)

1. OIL INSPECTOR'S FEES—BURDEN OF PROOF.
  Under a charter and ordinance providing for an inspector of oils, to receive such fees for inspecting oils as the common council may fix, to be paid by the owners of the oil inspected, the burden of proof as to the number of gallons inspected, in an action to recover fees for such inspection, is on the inspector.

2. ORDINANCE—VALIDITY.
  A city charter authorizing the council to fix the fees for inspecting oils, to be paid for by the owner of the oil, does not authorize fixing an unreasonable fee; and an ordinance fixing the fee for inspecting kerosene oil at one-half cent per gallon is void, as oppressive to trade and commerce, where it does not impose any restrictions on the inspector, or rules regulating his conduct, or the frequency of the inspections, and the fee amounts to 8⅓ per cent. of the entire value of the oil inspected.

Appeal from special term.

Action by Napoleon B. Ford against the Standard Oil Company. There was a verdict for plaintiff, and from an order denying a new trial defendant appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

E. C. Aiken, for appellant.
Frank S. Coburn, for respondent.

FOLLETT, J. This action was begun July 7, 1897, to recover $377.50, with interest, alleged to be due for the inspection of 75,500 gallons of kerosene oil, at one-half cent per gallon. The city of Auburn is a municipal corporation, existing under chapter 53 of the Laws of 1879, and the acts amendatory thereof and supplementary

thereto. The following are the sections of the city charter and ordinances relating to the questions involved in this action:

The twenty-ninth section provides that the common council shall appoint one or more sealers of weights and measures, who shall hold office for two years, and until their successors are appointed and qualify, unless sooner removed by the common council.

"Sec. 30. The common council shall prescribe the duties and fix the compensation when not otherwise provided, of. each of the officers appointed under this act. * * *" As amended by chapter 199, Laws 1889.

"Sec. 33. The common council may make, continue, modify and repeal such ordinances as may be necessary to carry into full effect any and all of the powers conferred upon said corporation by this act. * * * Ordinances may be made as aforesaid for the following purposes, namely: * * *

"Subd. 36. To define the duties of the sealer of weights and measures, and to regulate his compensation."

"Subd. 52. And such other and further ordinances not inconsistent with the laws of the state, as shall be deemed expedient for the good government of the city, the protection of its property, the safety of its citizens, the preservation of peace and good order, the suppression of vice, the benefit of trade, the preservation and protection of the public streets, the preservation of the public health, the prevention and extinguishment of fires and the exercise of its corporate powers and performance of its corporate duties." As amended by chapter 536, Laws 1895.

"Sec. 49. The sealer of weights and measures shall perform such duties and receive such fees as are, or may be provided by law. He shall be inspector of oils and receive such fees for inspecting oils as the common council may fix by ordinance, to be paid by the parties whose oil shall be inspected."

### Ordinances.

"Sec. 68. The sealer of weights and measures is hereby appointed inspector of oils. He shall inspect and test all refined petroleum or kerosene oils which may be manufactured, stored or offered for sale, and stamp or mark the barrel or package inspected and tested, when the fire test shall be one hundred and ten degrees or more Fahrenheit. When the fire test shall be less than one hundred and ten degrees Fahrenheit, the fact shall be reported to the mayor.

"Sec. 69. The sealer of weights and measures shall make a register which shall contain the names of the persons, their places of business, the dates of inspection and examination, the weights, measures, scalebeams, steelyards or weighing apparatus sealed or marked by him, and the oil inspected and tested, with the barrel or package stamped or marked, and all fees charged and collected by him for services rendered under this title, and shall once in each year deliver a copy of such register to the city clerk, for the use of all persons who may desire to inspect the same. The city clerk shall present such report to the common council at its first regular meeting after his receipt of such copy.

"Sec. 70. The sealer of weights and measures shall be entitled to demand and receive from the person or persons for whom services are performed, the following fees, viz.: * * * For inspecting refined petroleum or kerosene oils, one-half cent per gallon.

"Sec. 71. No person shall keep, store or sell, or expose for sale, refined petroleum or kerosene oil, the fire test of which shall be less than one hundred and ten degrees Fahrenheit, nor sell the same except in barrels or packages having thereon legibly stamped or marked the inspector's (sealer of weights or measures) official stamp or mark. Any person violating any of the provisions of this section, shall, upon conviction thereof, be fined not less than fifty, nor more than five hundred dollars."

In March, 1896, the plaintiff was appointed by the common council of the city of Auburn a sealer of weights and measures in and for that city. The record shows that the defendant did not request the plaintiff to inspect its oil, but forbade him from doing so, and gave

him notice that it would not pay his fees for making the inspection.
The plaintiff testified that he tested the following quantities of oil,
on the following dates:

| | | | | |
|---|---|---|---|---|
| May 11, 1896 | .............................................. | 15.000 | gallons. |
| " 28, " | .............................................. | 12,000 | " |
| " 29, " | .............................................. | 15,000 | " |
| June 9, " | .............................................. | 7,500 | " |
| Aug. 7, " | ............................................. | 14,000 | " |
| " 24, " | .............................................. | 12,000 | " |

75,500 gallons.

The kerosene kept by the defendant at the city of Auburn, for sale
in that city and in the villages near by, was stored in three tanks, and,
as the oil was sold from them, they were replenished from oil
cars, the quantities stored in the tanks varying from day to day.
When the plaintiff inspected the oil he did not measure the quantities
tested, nor did he ascertain the capacities of the tanks in which it
was stored, but simply estimated the quantities. He testified that he
stated the amount of his estimate to the defendant's manager, who
replied that the amount was correct. The defendant's manager de-
nied that he stated that the quantities estimated by the plaintiff were
correct, and the only issue of fact submitted to the jury was the num-
ber of gallons of oil tested. Upon this issue the defendant asked
the court to charge that the burden was on the plaintiff to show
how many gallons he inspected, which request the court declined,
and the defendant excepted. This was error. Before the plaintiff
could recover one-half cent per gallon, the fee fixed by the ordinance,
he was bound to establish by satisfactory evidence the number of
gallons inspected, and the burden of making that proof was on the
plaintiff. The quantity could not be established by guess, nor by the
opinion of the plaintiff, at least, unless he was shown to be so familiar
with the capacities of such receptacles as to be competent to give an
opinion. But there was no occasion for an opinion by any one, for the
capacities of the tanks were easily ascertainable by exact measure-
ment, and so was the quantity of oil contained in them. The diameter
or circumference of the tanks and the depth of the oil being shown,
the quantity was easily computed. It is the duty of the official in-
spectors to be exact, and not reach their results by guesswork.

But on another ground I think the plaintiff was not entitled to
recover. At the close of the plaintiff's case the defendant moved
for a nonsuit on the following grounds:

"First, that no cause of action has been made out against the defendant;
second, that the services of plaintiff were not requested by defendant, and
that defendant did not promise to pay for them; third, that the law creating
the office of oil inspector, and plaintiff's appointment under said law, are
illegal and void, and in violation of section 8 of article 5 of the constitution of
the state; fourth, that the fees imposed by the ordinance are not reasonable
in amount; fifth, that the inspection proved was not of barrels and pack-
ages, as required by the ordinance; sixth, that the ordinance in question is
void, as being in conflict with a general law (chapter 773, Laws 1865), or such
provisions of it as are continued in the domestic commerce law."

The motion was denied, and the defendant excepted. At the close
of the evidence the motion for a nonsuit was renewed on the same
grounds, and was again denied, and an exception taken.

By the seventieth ordinance of the city of Auburn, the fee imposed for inspecting oil is one-half cent per gallon. The value of the oil inspected was shown to have been six cents per gallon, so that the fee imposed by the ordinance, and demanded by this plaintiff, for inspecting, was one-twelfth of the value of the oil.

The plaintiff testified that the fire test of all the oil inspected was 150 deg. Fahrenheit, or 40 deg. above the test required by the seventy-first ordinance of the city of Auburn, by the test required by section 3 of chapter 773 of the Laws of 1865, as amended by chapter 872 of the Laws of 1866 (3 Rev. St. [Bank's 9th Ed.] p. 2228), which remained in force until October 1, 1896, and 40 deg. above the test required by section 23 of chapter 376 of the Laws of 1896 ("Domestic Commerce Law"), which took effect October 1, 1896.

Assuming that, under section 8 of article 5 of the constitution of this state, the common council of the city of Auburn, "for the purpose of protecting the public health," has power by ordinance to provide for the inspection of kerosene oil kept within the city, fix the fees of the inspector, and compel the owner of the oil to pay the inspector's fees for testing kerosene oil found to be far above the legal standard, still I think the ordinance under which the plaintiff seeks to recover must be held to be unreasonable and void, because (1) the fee fixed is excessive, and (2) no restrictions are imposed on the inspector, or rules established regulating his conduct. This ordinance, fixing the fee at one-half cent per gallon, is equivalent to imposing a tax upon the owner of the oil equal to one-twelfth of the value of the oil inspected, or, otherwise stated, to $8\frac{1}{3}$ per cent of its value. Such an ordinance is an unjust and oppressive burden imposed on trade, and is beyond the power of the common council of the city of Auburn. By the forty-ninth section of the charter the common council is authorized by ordinance to fix the fees for inspecting oil, which the section provides must be paid by the owner of the oil. But this section does not authorize the common council to fix an unreasonable fee for such service, and to impose its payment on the owner of the oil. The rule that municipal ordinances are invalid if they are unreasonable, or oppressive to trade and commerce, is well settled. Mayor, etc., of City of New York v. Dry-Dock, E. B. & B. R. Co. (Com. Pl.) 15 N. Y. Supp. 297; Brooklyn C. R. Co. v. City of Brooklyn, 37 Hun, 413; People v. Jarvis, 19 App. Div. 466, 46 N. Y. Supp. 596; Cooley, Const. Lim. 298 et seq., and cases cited; Dill. Mun. Corp. (4th Ed.) § 319 et seq., and cases cited; Beach, Pub. Corp. § 512 et seq., and cases cited; 17 Am. & Eng. Enc. Law, 247 et seq., and cases cited. It requires no greater time to test several thousand gallons of oil contained in three tanks than it does to test three separate barrels of oil, and an ordinance permitting an inspector to charge $8\frac{1}{3}$ per cent. of the entire value of the oil inspected, for such labor, is oppressive. It is urged in defense of the ordinance that the common council, in fixing the fee, "undoubtedly took into consideration the fact that much of the oil tested was in small quantities, where the fee would be ridiculously small, and sought to fix a figure which would ultimately fairly compensate the officer for the services rendered." This argument, it seems to me, is unsound.

The common council had no right to impose a fee upon this defendant for the purpose of compensating the plaintiff for services which he might perform in inspecting the oils of other owners. It would have been easy to have provided for a justly graduated scale of fees for the services rendered, so that each owner should pay only a just compensation for the inspection of his oil. The result of such a tax, if sustained, will be to raise the price of oil, and the ordinance, instead of protecting, will impose a burden on the citizens of Auburn. A municipal ordinance which is general in its scope may be adjudged reasonable as applied to one state of facts, and unreasonable when it is sought to be applied to a different state of facts. Nicoulin v. Lowery, 49 N. J. Law, 391, 8 Atl. 513; Pennsylvania R. Co. v. Mayor, etc., of Jersey City, 47 N. J. Law, 286. The seventieth ordinance, when applied to the state of facts in the case at bar, is unreasonable and oppressive.

Again, the ordinances in no way limit the power of the inspector, or regulate the manner or frequency of the performance of his duties, but leave the whole subject of inspection to his discretion. In case he inspects the oil in the tanks on a given day, which is partly withdrawn and replenished the next day, there is nothing to prevent the inspector from reinspecting the whole quantity, and charging the one-half cent per gallon. Had the ordinances provided that, in case oil was contained in storage tanks, the contents of which were subject to change, in whole or in part, such tanks might be inspected bi-monthly, or quarterly, or with such frequency as would protect the public, a different question would be presented.

The order denying a motion for a new trial on the minutes should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.