SALT LAKE CITY v. BENNION GAS & OIL CO.

No. 5081.    Decided October 20, 1932.    (15 P. [2d] 648.)

*F. W. James*, of Salt Lake City, for appellant.

*Shirley P. Jones* and *A. W. Watson*, both of Salt Lake City, for respondent.

BARKER, District Judge.

Salt Lake City, a municipal corporation, brought this action in the district court of Salt Lake county against the Bennion Gas & Oil Company, a corporation. The suit was brought to recover a judgment for $250 alleged to be due the city as an inspection fee for the year 1928 for the inspection of gasoline and oil sold by said company at wholesale in Salt Lake City.

The action is maintained pursuant to the provisions of section 2096, Revised Ordinances of Salt Lake City, Utah, 1920, duly passed by said city and which provides as follows:

"Section 2096. Inspection Fees. For inspecting oils as in this chapter provided, the city license assessor and collector shall collect yearly in advance, from all dealers selling at retail and carrying a stock of more than ten gallons of gasoline or motor spirits, the sum of $25.00, and from dealers selling at wholesale, the sum of $250.00."

After trial to the court, sitting without a jury, conclusions of law, judgment, and decree were made and entered in favor of Salt Lake City, a municipal corporation and against the defendant, Bennion Gas & Oil Company, a corporation. It is from this judgment that the company appeals.

The sole question raised by the appeal is with respect to the validity of the city ordinance. In its original brief filed herein the appellant contends that the ordinance is void for three different reasons, to wit: 1. That the city has no power to charge for the service of inspecting oils; 2. that the city has no right to go outside of the city limits to make inspections, but can only inspect the gasoline that is sold in Salt Lake City; 3. that, if the city does have the power to charge for these services, the charge must have

some relationship to the service rendered; that a blanket charge for all alike is a license or tax, and not an inspection fee.

These three propositions are discussed by the appellant in its brief, and were also presented in the oral argument to the court. However, in appellant's reply brief, which it was granted leave to submit subsequent to the oarl arguments of the case, appellant sets forth at page 4 thereof that:

"Appellant's contentions practically resolve themselves down into two. First, that the power to inspect does not carry with it the power to charge for the inspection. Second, that the fee charged is not an inspection fee because (a) it is a flat charge to all alike; (b) that it is discriminatory; (c) that it is a revenue measure; (d) that it has no relationship whatsoever to the services rendered for inspection."

In view of the foregoing we shall act upon the assumption that the other objections raised by the appellant have been waived and abandoned, and shall proceed to a determination of the two contentions summarized by the appellant and relied upon by it.

Appellant seems to concede, as indeed we think it must, that respondent has the authority, under the legislative grants to it, to pass an ordinance providing for the inspection of gasoline, such as the ordinance under consideration. In considering and determining the ▮ power and authority, and in fixing the limitations placed upon municipalities in such matters, it has become the settled law of this jurisdiction, and this court has repeatedly held:

"That the powers of the city are strictly limited to those expressly granted, to those necessarily or fairly implied in or incident to the powers expressly granted, and to those essential to the declared objects and purposes of the corporation, is settled law in this state." *Salt Lake City* v. *Sutter*, 61 Utah 533, 216 P. 234; *American Fork City* v. *Robinson et al.*, 77 Utah 168, 292 P. 249, 250; *William Morgan* v. *Salt Lake City et al.* (Utah) 3 P. (2d) 510.

The Legislature of this state has granted to municipalities, including the respondent, the power and authority to pass ordinances:

"To provide for the inspection, measurement, or graduation of any merchandise, manufacture, or commodity, and to appoint necessary officers therefor." Title 16, chapter 3, § 570x45 Compiled Laws of Utah, 1917.

The right or power to pass inspection laws has been uniformly recognized as the subject of delegation to municipal corporations. 32 C. J. 931.

Respondent in the instant case has been granted direct power and express authority, under section 570x45, supra, to pass inspection ordinances, and the law is that where such power has been given by the Legislature the same carries with it as an incident thereto the right to charge a fee for said inspection. This proposition is supported by the great weight of authority and by the following cases, from which we quote excerpts:

"If expenses are incurred in the exercise of this police power, some one must pay them, and it is only fair that the private corporation enjoying the franchise and serving the public for profit should bear this burden. The municipal authorities must, in the first instance, determine what kind of inspection is necessary and furnish the officers and instrumentalities with which to make it. The right to be reimbursed for the cost of inspection and expenses thus incurred the law recognizes. However, the municipalities are not required to wait until such expenses have been incurred and paid and then, by ordinance or otherwise, provide for their collection, but the reasonable cost of inspection during the entire year may be anticipated and an ordinance passed fixing the amount of an annual license fee with which to pay such expenses. When such a license fee is imposed, the kind, character, and cost of inspection must necessarily be the guiding thought of those whose duty it is to deal with the question." *Kittanning Borough* v. *American Natural Gas Co.*, 239 Pa. 210, 86 A. 717.

"It is an incident of the police regulation of an occupation which, because of its effect upon and relation to the public health, requires a reasonable inspection. The inspection is a service to the person engaged in the occupation and a discharge of duty owing to the

public by the municipality. But for the service, the fee, as such could not be lawfully exacted." *City of Dayton* v. *Jacobs*, 120 Ohio St. 225, 165 N. E. 844, 847.

"It is not necessary that the statute should specifically give to the municipality power to charge and collect a fee to cover the cost of inspection and regulation. Where the authority is lodged in the municipality to inspect and regulate, the further authority to charge a reasonable fee to cover the cost of inspection and regulation will be implied." *Prudential Co-op. Realty Co.* v. *City of Youngstown*, 118 Ohio St. 204, 160 N. E. 695, 698.

In the light of the foregoing authorities, we feel constrained to hold, and do hold, that the authority delegated to the respondent by the state to pass inspection ordinances carries with it as an incident to said power the right and power to charge and exact a fee to defray the cost of said inspection.

We now come to a consideration of appellant's second contention hereinbefore pointed out that the fee charged is not an inspection fee because (a) that it is a flat charge to all alike; (b) that it is discriminatory; (c) that it is a revenue measure; (d) that it has no relationship whatsoever to the service rendered for inspection. The same contention as is herein made by appellant for a reversal of this case was made in the case of *Standard Stock Food Co.* v. *H. R. Wright*, 225 U. S. 540, 32 S. Ct. 784, 56 L. Ed. 1197, and we are of the opinion that the decision in this case, together with the authorities appended thereto, completely answers the second contention made by appellant in the instant case. In sustaining the action of the circuit court, then Mr. Justice Hughes, who delivered the opinion of the court, 225 U. S. 540, 32 S. Ct. 784, 786, 56 L. Ed. at page 1201, said:

"We are of the opinion that the statute must be considered as an inspection law which it was within the power of the state to enact, and that its fair import is that the fees exacted by § 5, above quoted, are for the purpose of meeting the expenses of inspection. The bill alleges no facts warranting the conclusion that the charge is unreasonable as compared with this expense. * * *

"The payment of the sum of $100 in the case of 'condimental, patented, proprietary, or trademarked stock of poultry foods' was required in lieu of the inspection charge of 10 cents a ton, and was in effect a commutation of that charge. The essential character of the exaction was not altered. If it be said that this provision discriminates against one doing a small business, still the appellant wholly fails to show that it is thereby injured and thus entitled to complain. * * *

"The case in this aspect falls within the established rule that 'one who would strike down a state statute as violative of the Federal Constitution must bring himself by proper averments and showing within the class as to whom the act thus attacked is unconstitutional. He must show that the alleged unconstitutional feature of the law injures him, and so operates as to deprive him of rights protected by the Federal Constitution.' "

We are of the opinion that there is no merit to the second contention made by appellant.

As we view it, the important question in this case is whether the inspection fee exacted by respondent is reasonable. Appellant has not brought before this court any bill of exceptions setting forth the evidence offered before the trial court as touching this question. In considering this question we are therefore limited to what information may be found in the abstract of record, which sets forth the findings of fact, conclusions of law and judgment, and decree of the trial court. An examination of the findings of fact discloses that the respondent had a duly appointed superintendent of weights, measures, and oil inspection, and an assistant; that they procured samples of gasoline as provided for by the city ordiance; that it took at least an hour for analyzing samples of gasoline; that the superintendent of inspection received a salary of $2,100 per year, and his assistant $1,560 a year; and that, in addition thereto, the necessary laboratory and chemist's salary and equipment were furnished by respondent. So far as the record discloses, there was no evidence offered by appellant as to whether the fee of $250 per year was reasonable or unreasonable. In the case of *State* v. *Bartles Oil Co.*, 132

Minn. 138, 155 N. W. 1035, 1037, L. R. A. 1916D, 193, it is held that, within reasonable limits, the amont of the inspection fee is a question for the Legislature, and in the instant case we know of no reason why the same rule should not apply to the action of the legislative department of a municipality.

"Within reasonable limits the amount of the inspection fee is for the Legislature. Willis v. Standard Oil Co., 50 Minn. 299, 52 N. W. 652. The amount of the inspection charge is primarily with the Legislature and a statute will not be held unconstitutional as providing for an excessive charge unless it is so unreasonable and disproportionate to the service rendered as to attack the good faith of the law. 'The law being otherwise valid, the amount of the inspection fee is not a judicial question; it rests with the Legislature to fix the amount, and it can only present a valid objection when it is shown that it is so unreasonable and disproportionate to the services rendered as to attack the good faith of the law.'" *State* v. *Bartles Oil Co.*, supra.

In the foregoing case the appellant court held the statute valid and the inspection fee reasonable.

The case of *Ford* v. *Standard Oil Co.*, 32 App. Div. 596, 53 N. Y. S. 48, sustains the same principle of law. However, the court there held that the evidence before the court clearly showed the inspection fee to be unreasonable, as the fee charged amounted to $8\frac{1}{3}$ per cent of the total amount of gasoline handled by the company. In the case of *D. E. Foote & Co.* v. *Charles H. Stanley*, 232 U. S. 494, 34 S. Ct. 377, 378, 58 L. Ed. 698, the court adheres to the same principle of law, and in the course of the opinion says:

"Inspection necessarily involves expense, and the power to fix the fee, to cover that expense, is left primarily to the legislature, which must exercise discretion in determining the amount to be charged, since it is impossible to tell exactly how much will be realized under the future operations of any law. Besides, receipts and disbursements may so vary from time to time that the surplus of one year may be needed to supply the deficiency of another. If, therefore, the fees exceed cost by a sum not unreasonable, no question can arise as to the validity of the tax so far as the amount of the charge is concerned. And even if it appears that the sum collected is beyond what is needed for inspection expenses, the courts do not interfere, immediately on application,

because of the presumption that the legislature will reduce the fees to a proper sum."

This principle of law is supported by the following cases: *Red "C" Mfg. Oil Co.* v. *Board of Agriculture of North Carolina,* 222 U. S. 380, 32 S. Ct. 152, 56 L. Ed. 240; *Standard Stock Food Co.* v. *H. R. Wright,* 225 U. S. 540, 32 S. Ct. 784, 56 L. Ed. 1197; *Patapsco Guano Co.* v. *Board of Agriculture,* 171 U. S. 345, 18 S. Ct. 862, 43 L. Ed. 191, 194.

The trial court found, as its second conclusion of law, "that the said inspection fee of $250 per year for inspection of gasoline and oil sold in Salt Lake City at wholesale is reasonable." So far as the record discloses, appellant offered no evidence touching the cost of inspection covering the period of one year, and under that situation the trial court had a right to assume, in the absence of any evidence to the contrary, that the legislative body has provided for reasonable inspection fees (*Ogden City* v. *Leo,* 54 Utah 556, 182 P. 530, 5 A. L. R. 960), and had no alternative but to sustain the validity of the ordinance. Furthermore, this court must assume that the finding of the trial court that the inspection fee of $250 per year for the inspection of gasoline and oil sold at Salt Lake City at wholesale is reasonable, was supported by the evidence introduced at the trial, in addition to the presumption that the legislative body has provided for reasonable fees.

We are therefore of the opinion that the ordinance in question must be considered as an inspection ordinance which it was within the power of the municipality to enact, and that its fair import is that the fees exacted are for the purpose of meeting the expenses of inspection, and that there is nothing before the court warranting the conclusions that the charge is unreasonable as compared with the expense.

Under the situation and the state of the record, and in the light of the great weight of legal authority, we are of the opinion that we have no alternative but to sustain the

validity of the city ordinance and the judgment of the trial court.

The judgment of the district court is affirmed, respondent to recover its costs herein expended.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.

FOLLAND, J., being disqualified, did not participate herein.